2024R00193/DAF/JMR

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 24-358 (KMW) |
| | : | |
| v. | : | 18 U.S.C. § 1349 |
| | : | |
| TOMMY HAWKINS | : | |

# I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment and any objection based on venue, the United States Attorney for the District of New Jersey charges:

1. At all times relevant to this Information:

    a. Lender-1 was a financial institution that participated as lender in the Paycheck Protection Program ("PPP"), as described herein. Lender-1 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

    b. The defendant, TOMMY HAWKINS, was the branch manager at the Conshohocken, Pennsylvania location of Lender-1 until May 2021.

### The Payroll Protection Program ("PPP")

    c. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses

1

for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

        d.     To obtain a PPP loan, a business had to submit a PPP loan application signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant had to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to determine whether the business was eligible for a PPP loan and to calculate the amount of money the business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses, such as tax forms and bank statements.

        e.     A PPP loan application had to be processed by a participating financial institution (the lender). If the PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

        f.     PPP loan proceeds could only be used by the business for certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business used the loan proceeds on these expense items within a

designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

   g.  To obtain loan forgiveness of a loan in the amount of $150,000 or less, a borrower was required to submit a PPP Loan Forgiveness Application Form 3508S. Form 3508S required the borrower to report the amount of loan proceeds spent on payroll costs. It also required the borrower to certify that the information provided in the forgiveness application was true and correct.

## The Conspiracy

   2.  From in or about January 2021 through in or about May 2021, in Camden County in the District of New Jersey, Montgomery County, in the Eastern District of Pennsylvania, and elsewhere, the defendant,

TOMMY HAWKINS,

did knowingly and intentionally conspire and agree with others, known and unknown, to devise a scheme and artifice to defraud a financial institution, namely Lender-1, and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under, the custody or control of, a financial institution, namely Lender-1, by means of false or fraudulent pretenses, representations, or promises, contrary to Title 18, United States Code, Section 1344.

## Object of the Conspiracy

   3.  The object of the conspiracy was for defendant TOMMY HAWKINS and his co-conspirators to financially enrich themselves by obtaining federal relief funds that were intended for small businesses distressed by the COVID-19

pandemic through the submission of fraudulent loan applications for companies with little or no operations ("Non-Operating Companies") that included false statements about the Non-Operating Companies' number of employees, payroll, and expenses, and by providing false documentation to Lender-1.

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that:

   a. It was part of the conspiracy that Defendant TOMMY HAWKINS learned that Lender-1 was accepting applications for PPP loans. Lender-1 required that applicants first open a business bank account with Lender-1.

   b. It was further part of the conspiracy that defendant TOMMY HAWKINS agreed with other co-conspirators to recruit individuals who owned or controlled Non-Operating Companies (the "Recruits"). Some of the Non-Operating Companies were New Jersey companies and some of the Recruits were residents of New Jersey.

   c. It was further part of the conspiracy that defendant TOMMY HAWKINS and his co-conspirators directed the Recruits to open business bank accounts at the Conshohocken, Pennsylvania branch of Lender-1 even if the Recruits lived far from Conshohocken, Pennsylvania. Defendant TOMMY HAWKINS opened business bank accounts for some Recruits when the Recruits were not present for account opening, in violation of Lender-1's policies.

  d. It was further part of the conspiracy that defendant TOMMY HAWKINS provided a link to Lender-1's web portal that it used to accept PPP applications to Recruits directly or to co-conspirators working with the Recruits.

  e. It was further part of the conspiracy that the Recruits and co-conspirators working with the Recruits submitted PPP loan applications to Lender-1 that contained materially false representations. Those false statements included that the Non-Operating Companies had significantly higher employees and payroll expenses than they actually had.

  f. It was a further part of the conspiracy that co-conspirators created fraudulent IRS tax forms—including Forms 941 (Employer's Quarterly Federal Tax Return)—and bank statements, in the names of the Non-Operating Companies that falsely represented that the Non-Operating Companies had employees and payroll expenses in the period preceding the COVID-19 pandemic. These fraudulent documents were submitted to Lender-1 as part of the PPP loan applications.

  g. It was further part of the conspiracy that Defendant TOMMY HAWKINS told some Recruits who had not filed IRS Forms 941 that a co-conspirator could create IRS Forms 941 that could then be submitted as part of the PPP loan applications.

  h. It was further part of the conspiracy that Defendant Tommy Hawkins knew that many of the PPP loan applications submitted for the Non-Operating Companies included false documentation.

    i.  It was a further part of the conspiracy that after approving the PPP loans that were obtained under fraudulent pretenses, Lender-1 deposited the loan proceeds into the business bank accounts at Lender-1 that Defendant TOMMY HAWKINS opened for the Non-Operating Companies.

    j.  It was a further part of the conspiracy that Lender-1 approved at least 38 PPP loans and distributed approximately $5,000,000 based on fraudulent PPP loan applications facilitated by Defendant TOMMY HAWKINS and his co-conspirators.

    k.  It was a further part of the conspiracy that the Recruits distributed a portion of the PPP loan proceeds with co-conspirators who assisted in applying for and obtaining the PPP loan. Defendant TOMMY HAWKINS received thousands of dollars in cash for his role in facilitating the PPP loan scheme described in this Information.

    l.  It was further part of the conspiracy that Defendant Tommy Hawkins received incentive compensation from Lender-1 for opening new business bank accounts for the Non-Operating Companies that received PPP loans based on fraudulent applications.

 In violation of Title 18, United States Code, Section 1349.

## **FORFEITURE ALLEGATION**

1. As a result of committing the offense charged in Count One of this Information, defendant TOMMY HAWKINS shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), all property, real or personal, constituting or derived from proceeds traceable to the offense charged in this Information.

## **SUBSTITUTE ASSETS PROVISION**

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

*Philip R. Sellinger by AZ*

_____
PHILIP R. SELLINGER
United States Attorney

CASE NUMBER: _____

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**TOMMY HAWKINS**

# INFORMATION FOR

**18 U.S.C. § 1349**

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DANIEL A. FRIEDMAN
JASON M. RICHARDSON
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026